Justice GINSBURG delivered the opinion of the Court.
This case concerns the issue-preclusion component of the Double Jeopardy Clause.[1] In criminal prosecutions, as in civil litigation, the issue-preclusion principle means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
Does issue preclusion apply when a jury returns inconsistent verdicts, convicting on one count and acquitting on another count, where both counts turn on the very same issue of ultimate fact? In such a case, this Court has held, both verdicts stand. The Government is barred by the Double Jeopardy Clause from challenging the acquittal, see *357 Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), but because the verdicts are rationally irreconcilable, the acquittal gains no preclusive effect, United States v. Powell, 469 U.S. 57, 68, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).
Does issue preclusion attend a jury's acquittal verdict if the same jury in the same proceeding fails to reach a verdict on a different count turning on the same critical issue? This Court has answered yes, in those circumstances, the acquittal has preclusive force. Yeager v. United States, 557 U.S. 110, 121-122, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). As "there is no way to decipher what a hung count represents," we reasoned, a jury's failure to decide "has no place in the issue-preclusion analysis." Ibid. ; see id., at 125, 129 S.Ct. 2360 ("[T]he fact that a jury hangs is evidence of nothing-other than, of course, that it has failed to decide anything.").
In the case before us, the jury returned irreconcilably inconsistent verdicts of conviction and acquittal. Without more, Powell would control. There could be no retrial of charges that yielded acquittals but, in view of the inconsistent verdicts, the acquittals would have no issue-preclusive effect on charges that yielded convictions. In this case, however, unlike Powell, the guilty verdicts were vacated on appeal because of error in the judge's instructions unrelated to the verdicts' inconsistency. Petitioners urge that, just as a jury's failure to decide has no place in issue-preclusion analysis, so vacated guilty verdicts should not figure in that analysis.
We hold otherwise. One cannot know from the jury's report why it returned no verdict. "A host of reasons" could account for a jury's failure to decide-"sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few." Yeager, 557 U.S., at 121, 129 S.Ct. 2360. But actual inconsistency in a jury's verdicts is a reality; vacatur of a conviction for unrelated legal error does not reconcile the jury's inconsistent returns. We therefore bracket this case with Powell, not Yeager, and affirm the judgment of the Court of Appeals, which held that issue preclusion does not apply when verdict inconsistency renders unanswerable "what the jury necessarily decided." 790 F.3d 41, 47 (C.A.1 2015).
I
A
The doctrine of claim preclusion instructs that a final judgment on the merits "foreclos[es] successive litigation of the very same claim." New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ; see Restatement (Second) of Judgments § 19, p. 161 (1980) (hereinafter Restatement). So instructing, the doctrine serves to "avoid multiple suits on identical entitlements or obligations between the same parties." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402, p. 9 (2d ed. 2002) (hereinafter Wright & Miller). Long operative in civil litigation, Restatement, at 2, claim preclusion is also essential to the Constitution's prohibition against successive criminal prosecutions. No person, the Double Jeopardy Clause states, shall be "subject for the same offense to be twice put in jeopardy of life or limb." Amdt. 5. The Clause "protects against a second prosecution for the same offense after conviction"; as well, "[i]t protects against a second prosecution for the same offense after acquittal." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "[A] verdict of acquittal [in our justice system] is final," the last word on a criminal charge, and therefore operates as "a bar to a subsequent prosecution *358 for the same offense." Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).
The allied doctrine of issue preclusion ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment. See Restatement §§ 17, 27, at 148, 250 ; Wright & Miller § 4416, at 386. It applies in both civil and criminal proceedings, with an important distinction. In civil litigation, where issue preclusion and its ramifications first developed, the availability of appellate review is a key factor. Restatement § 28, Comment a, at 274; see id., § 28, Reporter's Note, at 284 (noting "the pervasive importance of reviewability in the application of preclusion doctrine"). In significant part, preclusion doctrine is premised on "an underlying confidence that the result achieved in the initial litigation was substantially correct." Standefer v. United States, 447 U.S. 10, 23, n. 18, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) ; see Restatement § 29, Comment f, at 295. "In the absence of appellate review," we have observed, "such confidence is often unwarranted." Standefer, 447 U.S., at 23, n. 18, 100 S.Ct. 1999.
In civil suits, inability to obtain review is exceptional; it occurs typically when the controversy has become moot. In criminal cases, however, only one side (the defendant) has recourse to an appeal from an adverse judgment on the merits. The Government "cannot secure appellate review" of an acquittal, id., at 22 100 S.Ct. 1999, even one "based upon an egregiously erroneous foundation," Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Juries enjoy an " unreviewable power ... to return a verdict of not guilty for impermissible reasons," for "the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause." United States v. Powell, 469 U.S. 57, 63, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). The absence of appellate review of acquittals, we have cautioned, calls for guarded application of preclusion doctrine in criminal cases. See Standefer, 447 U.S., at 22-23, and n. 18, 100 S.Ct. 1999. Particularly where it appears that a jury's verdict is the result of compromise, compassion, lenity, or misunderstanding of the governing law, the Government's inability to gain review "strongly militates against giving an acquittal [issue] preclusive effect." Id., at 23, 100 S.Ct. 1999. See also Restatement § 29, Comment g, at 295 (Where circumstances suggest that an issue was resolved on erroneous considerations, "taking the prior determination at face value for purposes of the second action would [impermissibly] extend the ... imperfections in the adjudicative process."); id., § 28, Comment j, at 283 (Issue preclusion may be denied where it is "evident from the jury's verdict that the verdict was the result of compromise."); Wright & Miller § 4423, at 617 (same).
B
This case requires us to determine whether an appellate court's vacatur of a conviction alters issue-preclusion analysis under the Double Jeopardy Clause. Three prior decisions guide our disposition.
This Court first interpreted the Double Jeopardy Clause to incorporate the principle of issue preclusion in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[2] Ashe involved a robbery of six *359 poker players by a group of masked men. Ashe was charged with robbing one of the players, but a jury acquitted him "due to insufficient evidence." Id., at 439, 90 S.Ct. 1189. The State then tried Ashe again, this time for robbing another of the poker players. Aided by "substantially stronger" testimony from "witnesses [who] were for the most part the same," id., at 439-440, 90 S.Ct. 1189 the State secured a conviction. We held that the second prosecution violated the Double Jeopardy Clause. Because the sole issue in dispute in the first trial was whether Ashe had been one of the robbers, the jury's acquittal verdict precluded the State from trying to convince a different jury of that very same fact in a second trial. Id., at 445, 90 S.Ct. 1189.
Our decision in Ashe explained that issue preclusion in criminal cases must be applied with "realism and rationality." Id., at 444, 90 S.Ct. 1189. To identify what a jury in a previous trial necessarily decided, we instructed, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." Ibid. (quoting Mayers & Yarbrough, Bis Vexari : New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38 (1960) ). This inquiry, we explained, "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." 397 U.S., at 444, 90 S.Ct. 1189 (quoting Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948) ). We have also made clear that "[t]he burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided" by a prior jury's verdict of acquittal. Schiro v. Farley, 510 U.S. 222, 233, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (internal quotation marks omitted); accord Dowling v. United States, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).
In United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461, we held that a defendant cannot meet this burden when the same jury returns irreconcilably inconsistent verdicts on the question she seeks to shield from reconsideration. Powell 's starting point was our holding in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), that a criminal defendant may not attack a jury's finding of guilt on one count as inconsistent with the jury's verdict of acquittal on another count. Powell, 469 U.S., at 58-59, 105 S.Ct. 471. The Court's opinion in Dunn stated no exceptions to this rule, and after Dunn the Court had several times "alluded to [the] rule as an established principle," 469 U.S., at 63, 105 S.Ct. 471. Nevertheless, several Courts of Appeals had "recogniz[ed] exceptions to the rule," id., at 62, 105 S.Ct. 471 and Powell sought an exception for the verdicts of guilt she faced.
At trial, a jury had acquitted Powell of various substantive drug charges but convicted her of using a telephone in "causing and facilitating" those same offenses. Id., at 59-60, 105 S.Ct. 471. She appealed, arguing that "the verdicts were inconsistent, and that she therefore was entitled to reversal of the telephone facilitation convictions." Id., at 60, 105 S.Ct. 471. Issue preclusion, she maintained, barred "acceptance of [the] guilty verdict[s]" on the auxiliary offenses because the same jury had acquitted her of the predicate felonies. Id., at 64, 105 S.Ct. 471.
*360 Rejecting Powell's argument, we noted that issue preclusion is "predicated on the assumption that the jury acted rationally." Id., at 68, 105 S.Ct. 471. When a jury returns irreconcilably inconsistent verdicts, we said, one can glean no more than that "either in the acquittal or the conviction the jury did not speak their real conclusions." Id., at 64, 105 S.Ct. 471 (quoting Dunn, 284 U.S., at 393, 52 S.Ct. 189 ). Although it is impossible to discern which verdict the jurors arrived at rationally, we observed, "that does not show that they were not convinced of the defendant's guilt." Powell, 469 U.S., at 64-65, 105 S.Ct. 471 (quoting Dunn, 284 U.S., at 393, 52 S.Ct. 189 ). In the event of inconsistent verdicts, we pointed out, it is just as likely that "the jury, convinced of guilt, properly reached its conclusion on [one count], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [related] offense." Powell, 469 U.S., at 65, 105 S.Ct. 471. Because a court would be at a loss to know which verdict the jury "really meant," we reasoned, principles of issue preclusion are not useful, for they are "predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict." Id., at 68, 105 S.Ct. 471. Holding that the acquittals had no preclusive effect on the counts of conviction, we reaffirmed Dunn 's rule, under which both Powell's convictions and her acquittals, albeit inconsistent, remained undisturbed. 469 U.S., at 69, 105 S.Ct. 471.
Finally, in Yeager v. United States, 557 U.S. 110, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009), we clarified that Powell 's holding on inconsistent verdicts does not extend to an apparent inconsistency between a jury's verdict of acquittal on one count and its inability to reach a verdict on another count. See 557 U.S., at 124, 129 S.Ct. 2360 ("[I]nconsistent verdicts " present an "entirely different context" than one involving "both verdicts and seemingly inconsistent hung counts ."). Yeager was tried on charges of fraud and insider trading. Id., at 114, 129 S.Ct. 2360. The jury acquitted him of the fraud offenses, which the Court of Appeals concluded must have reflected a finding that he "did not have any insider information that contradicted what was presented to the public." Id., at 116, 129 S.Ct. 2360. Yet the jury failed to reach a verdict on the insider-trading charges, as to which "the possession of insider information was [likewise] a critical issue of ultimate fact." Id., at 123, 129 S.Ct. 2360. Arguing that the jury had therefore acted inconsistently, the Government sought to retry Yeager on the hung counts. We ruled that retrial was barred by the Double Jeopardy Clause.
A jury "speaks only through its verdict," we noted. Id., at 121, 129 S.Ct. 2360. Any number of reasons-including confusion about the issues and sheer exhaustion, we observed-could cause a jury to hang. Ibid. Accordingly, we said, only "a jury's decisions, not its failures to decide," identify "what a jury necessarily determined at trial." Id., at 122, 129 S.Ct. 2360. Because a hung count reveals nothing more than a jury's failure to reach a decision, we further reasoned, it supplies no evidence of the jury's irrationality. Id., at 124-125, 129 S.Ct. 2360. Hung counts, we therefore held, "ha[ve] no place in the issue-preclusion analysis," id., at 122, 129 S.Ct. 2360 : When a jury acquits on one count while failing to reach a verdict on another count concerning the same issue of ultimate fact, the acquittal, and only the acquittal, counts for preclusion purposes. Given the preclusive effect of the acquittal, the Court concluded, Yeager could not be retried on the hung count. Id., at 122-125, 129 S.Ct. 2360.
*361 C
With our controlling precedent in view, we turn to the inconsistent verdicts rendered in this case. The prosecution stemmed from an alleged bribe paid by petitioner Juan Bravo-Fernandez (Bravo), an entrepreneur, to petitioner Hector Martínez-Maldonado (Martínez), then a senator serving the Commonwealth of Puerto Rico. The alleged bribe took the form of an all-expenses-paid trip to Las Vegas, including a $1,000 seat at a professional boxing match featuring a popular Puerto Rican contender. United States v. Fernandez, 722 F.3d 1, 6 (C.A.1 2013). According to the Government, Bravo intended the bribe to secure Martínez' help in shepherding legislation through the Puerto Rico Senate that, if enacted, would "provid[e] substantial financial benefits" to Bravo's enterprise. Ibid. In the leadup to the Las Vegas trip, Martínez submitted the legislation for the Senate's consideration and issued a committee report supporting it; within a week of returning from Las Vegas, Martínez issued another favorable report and voted to enact the legislation. Id., at 6-7.
Based on these events, a federal grand jury in Puerto Rico indicted petitioners for, inter alia, federal-program bribery, in violation of 18 U.S.C. § 666 ; conspiracy to violate § 666, in violation of § 371 ; and traveling in interstate commerce to further violations of § 666, in violation of the Travel Act, § 1952(a)(3)(A).[3] Following a three-week trial, a jury convicted Bravo and Martínez of the standalone § 666 bribery offense, but acquitted them of the related conspiracy and Travel Act charges. Fernandez, 722 F.3d, at 7. Each received a sentence of 48 months in prison. Id., at 8.
The Court of Appeals for the First Circuit vacated the § 666 convictions for instructional error. Id., at 27. In the First Circuit's view, the jury had been erroneously charged on what constitutes criminal conduct under that statute. Id., at 22-27. The charge permitted the jury to find Bravo and Martínez "guilty of offering and receiving a gratuity," id., at 16, but, the appeals court held, § 666 proscribes only quid pro quo bribes, and not gratuities, id., at 6, 22.[4] True, the court acknowledged, the jury was instructed on both theories of bribery, and the evidence at trial sufficed to support a guilty verdict on either theory. Id., at 19-20. But the Court of Appeals could not say with confidence that the erroneous charge was harmless, so it vacated the § 666 convictions and remanded for further proceedings. Id., at 27, 39.
On remand, relying on the issue-preclusion component of the Double Jeopardy Clause, Bravo and Martínez moved for judgments of acquittal on the standalone § 666 charges. 988 F.Supp.2d 191 (D.P.R.2013). They could not be retried on the bribery offense, they insisted, because the jury necessarily determined that they were not guilty of violating § 666 when it acquitted them of conspiring to violate § 666 and traveling in interstate commerce to further violations of § 666. Id., at 193. That was so, petitioners maintained, because the only contested issue at trial was whether Bravo had offered, and Martínez had accepted, a bribe within the meaning of *362 § 666. Id., at 196 ; see Tr. of Oral Arg. 4 ("There was no dispute that they agreed to go to a boxing match together"; nor was there any dispute "that to get to Las Vegas from Puerto Rico, you have to travel" across state lines.). The District Court denied the motions for acquittal. 988 F.Supp.2d, at 196-198. If the sole issue disputed at trial was whether Bravo and Martínez had violated § 666, the court explained, then "the jury [had] acted irrationally." Id., at 196. Because the same jury had simultaneously convicted Bravo and Martínez on the standalone § 666 charges, "the verdict simply was inconsistent." Ibid.
The First Circuit affirmed the denial of petitioners' motions for acquittal, agreeing that the jury's inconsistent returns were fatal to petitioners' issue-preclusion plea. 790 F.3d 41. The jury received the same bribery instructions for each count involving § 666, the court noted, so the § 666 -based verdicts-convicting on the standalone bribery charges but acquitting on the related Travel Act and conspiracy counts-could not be reconciled. Id., at 54-55.[5]
The Court of Appeals rejected petitioners' argument that the eventual invalidation of the bribery convictions rendered Powell 's inconsistent-verdicts rule inapplicable. Ashe, the court reminded, calls for a practical appraisal based on the complete record of the prior proceeding; the § 666 bribery convictions, like the § 666 -based acquittals, were part of that record. See 790 F.3d, at 50. Nor are vacated convictions like hung counts for issue-preclusion purposes, the court continued. Informed by our decision in Yeager, the First Circuit recognized that a hung count reveals only a jury's failure to decide, and therefore cannot evidence actual inconsistency with a jury's decision. 790 F.3d, at 50-51. In contrast, the court said, vacated convictions "are jury decisions, through which the jury has spoken." Id., at 51. The later upset of a conviction on an unrelated ground, the court reasoned, does not undermine Powell 's recognition that "inconsistent verdicts make it impossible to determine what a jury necessarily decided." 790 F.3d, at 51. The First Circuit therefore concluded that "vacated convictions, unlike hung counts, are relevant to the Ashe [issue-preclusion] inquiry." Ibid.
We granted certiorari to resolve a conflict among courts on this question: Does the issue-preclusion component of the Double Jeopardy Clause bar the Government from retrying defendants, like Bravo and Martínez, after a jury has returned irreconcilably inconsistent verdicts of conviction and acquittal, and the convictions are later vacated for legal error unrelated to the inconsistency?[6]
*363 557 U.S. ----, 136 S.Ct. 1491, 194 L.Ed.2d 585 (2016). Holding that the Double Jeopardy Clause does not bar retrial in these circumstances, we affirm the First Circuit's judgment.
II
When a conviction is overturned on appeal, "[t]he general rule is that the [Double Jeopardy] Clause does not bar reprosecution." Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). The ordinary consequence of vacatur, if the Government so elects, is a new trial shorn of the error that infected the first trial. This "continuing jeopardy" rule neither gives effect to the vacated judgment nor offends double jeopardy principles. Rather, it reflects the reality that the "criminal proceedings against an accused have not run their full course." Ibid. And by permitting a new trial post vacatur, the continuing-jeopardy rule serves both society's and criminal defendants' interests in the fair administration of justice. "It would be a high price indeed for society to pay," we have recognized, "were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). And the rights of criminal defendants would suffer too, for "it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." Ibid.
Bravo and Martínez ask us to deviate from the general rule that, post vacatur of a conviction, a new trial is in order. When a conviction is vacated on appeal, they maintain, an acquittal verdict simultaneously returned should preclude the Government from retrying the defendant on the vacated count. Our precedent, harmonious with issue-preclusion doctrine, opposes the foreclosure petitioners seek.
A
Bravo and Martínez bear the burden of demonstrating that the jury necessarily resolved in their favor the question whether they violated § 666. Schiro, 510 U.S., at 233, 114 S.Ct. 783. But, as we have explained, see supra, at 359 - 360, a defendant cannot meet that burden where the trial yielded incompatible jury verdicts on the issue the defendant seeks to insulate from relitigation. Here, the jury convicted Bravo and Martínez of violating § 666 but acquitted them of conspiring, and traveling with the intent, to violate § 666. The convictions and acquittals are irreconcilable because other elements of the Travel Act and conspiracy counts were not disputed. See supra, at 361 - 362, and n. 5. It is unknowable "which of the inconsistent verdicts-the acquittal[s] or the conviction[s]-'the jury really meant.' " 790 F.3d, at 47 (quoting Powell, 469 U.S., at 68, 105 S.Ct. 471 ); see Restatement § 29, Comment f, at 295 ("Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, ... confidence [in that determination] is generally unwarranted."). In view of the Government's inability to obtain review of the acquittals, Powell, *364 469 U.S., at 68, 105 S.Ct. 471 the inconsistent jury findings weigh heavily against according those acquittals issue-preclusive effect. See Standefer, 447 U.S., at 23, n. 17, 100 S.Ct. 1999.
That petitioners' bribery convictions were later vacated for trial error does not alter our analysis. The critical inquiry is whether the jury actually decided that Bravo and Martínez did not violate § 666. Ashe counsels us to approach that task with "realism and rationality," 397 U.S., at 444, 90 S.Ct. 1189 in particular, to examine the trial record "with an eye to all the circumstances of the proceedings," ibid. As the Court of Appeals explained, "the fact [that] the jury ... convicted [Bravo and Martínez] of violating § 666 would seem to be of quite obvious relevance" to this practical inquiry, "even though the convictions were later vacated." 790 F.3d, at 50. Because issue preclusion "depends on the jury's assessment of the facts in light of the charges as presented at trial," a conviction overturned on appeal is "appropriately considered in our assessment of [an acquittal] verdict's preclusive effect." United States v. Citron, 853 F.2d 1055, 1061 (C.A.2 1988). Indeed, the jurors in this case might not have acquitted on the Travel Act and conspiracy counts absent their belief that the § 666 bribery convictions would stand. See ibid.
Bravo and Martínez could not be retried on the bribery counts, of course, if the Court of Appeals had vacated their § 666 convictions because there was insufficient evidence to support those convictions. For double jeopardy purposes, a court's evaluation of the evidence as insufficient to convict is equivalent to an acquittal and therefore bars a second prosecution for the same offense. See Burks v. United States, 437 U.S. 1, 10-11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ; cf. Powell, 469 U.S., at 67, 105 S.Ct. 471 (noting that defendants are "afforded protection against jury irrationality or error by [courts'] independent review of the sufficiency of the evidence"). But this is scarcely a case in which the prosecution "failed to muster" sufficient evidence in the first proceeding. Burks, 437 U.S., at 11, 98 S.Ct. 2141. Quite the opposite. The evidence presented at petitioners' trial, the Court of Appeals determined, supported a guilty verdict on the gratuity theory (which the First Circuit ruled impermissible) as well as the quid pro quo theory (which the First Circuit approved). 790 F.3d, at 44. Vacatur was compelled for the sole reason that the First Circuit found the jury charge erroneous to the extent that it encompassed gratuities. See supra, at 361 - 362, and n. 4. Therefore, the general rule of "allowing a new trial to rectify trial error" applied. Burks, 437 U.S., at 14, 98 S.Ct. 2141 (emphasis deleted).
Nor, as the Government acknowledges, would retrial be tolerable if the trial error could resolve the apparent inconsistency in the jury's verdicts. See Brief for United States 30 (If, for example, "a jury receives an erroneous instruction on the count of conviction but the correct instruction on the charge on which it acquits, the instructional error may reconcile the verdicts."). But the instructional error here cannot account for the jury's contradictory determinations because the error applied equally to every § 666-related count. See supra, at 362.
As in Powell, so in this case, "[t]he problem is that the same jury reached inconsistent results." 469 U.S., at 68, 105 S.Ct. 471. The convictions' later invalidation on an unrelated ground does not erase or reconcile that inconsistency: It does not bear on "the factual determinations actually and necessarily made by the jury," nor does it "serv[e] to turn the jury's otherwise *365 inconsistent and irrational verdict into a consistent and rational verdict." People v. Wilson, 496 Mich. 91, 125, 852 N.W.2d 134, 151 (2014) (Markman, J., dissenting). Bravo and Martínez, therefore, cannot establish the factual predicate necessary to preclude the Government from retrying them on the standalone § 666 charges-namely, that the jury in the first proceeding actually decided that they did not violate the federal bribery statute.
B
To support their argument for issue preclusion, Bravo and Martínez highlight our decision in Yeager . In Yeager, they point out, we recognized that hung counts "have never been accorded respect as a matter of law or history." 557 U.S., at 124, 129 S.Ct. 2360. That is also true of vacated convictions, they urge, so vacated convictions, like hung counts, should be excluded from the Ashe inquiry into what the jury necessarily determined. Brief for Petitioners 20-24. Asserting that we have "never held an invalid conviction ... relevant to or evidence of anything," Tr. of Oral Arg. 5, Bravo and Martínez argue that taking account of a vacated conviction in our issue-preclusion analysis would impermissibly give effect to "a legal ity," Brief for Petitioners 39; see Wilson, 496 Mich., at 107, 852 N.W.2d, at 142 (majority opinion) (considering a vacated count would impermissibly "bring that legally vacated conviction back to life").
This argument misapprehends the Ashe inquiry. It is undisputed that petitioners' convictions are invalid judgments that may not be used to establish their guilt. The question is whether issue preclusion stops the Government from prosecuting them anew. On that question, Bravo and Martínez bear the burden of showing that the issue whether they violated § 666 has been "determined by a valid and final judgment of acquittal." Yeager, 557 U.S., at 119, 129 S.Ct. 2360 (internal quotation marks omitted). To judge whether they carried that burden, a court must realistically examine the record to identify the ground for the § 666 -based acquittals . Ashe, 397 U.S., at 444, 90 S.Ct. 1189. A conviction that contradicts those acquittals is plainly relevant to that determination, no less so simply because it is later overturned on appeal for unrelated legal error: The split verdict-finding § 666 violated on the standalone counts, but not violated on the related Travel Act and conspiracy counts-tells us that, on one count or the other, "the jury [did] not follo[w] the court's instructions," whether because of "mistake, compromise, or lenity." Powell, 469 U.S., at 65, 105 S.Ct. 471 ; see supra, at 360. Petitioners' acquittals therefore do not support the application of issue preclusion here.[7]
Further relying on Yeager, Bravo and Martínez contend that their vacated convictions should be ignored because, as with hung counts, "there is no way to decipher" what they represent. Brief for Petitioners 28 (quoting Yeager, 557 U.S., at 121, 129 S.Ct. 2360 ). The § 666 convictions are meaningless, they maintain, because the jury was allowed to convict on the basis of conduct not criminal in the First Circuit- *366 payment of a gratuity. Brief for Petitioners 24.
This argument trips on Yeager 's reasoning. Yeager did not rest on a court's inability to detect the basis for a jury's decision. Rather, this Court reasoned that, when a jury hangs, there is no decision, hence no evidence of irrationality. 557 U.S., at 124-125, 129 S.Ct. 2360. A verdict of guilt, by contrast, is a jury decision, even if subsequently vacated on appeal. It therefore can evince irrationality.
That is the case here. Petitioners do not dispute that the Government's evidence at trial supported a guilty verdict on the quid pro quo theory, or that the gratuity instruction held erroneous by the Court of Appeals applied to every § 666 -based offense. Because no rational jury could have reached conflicting verdicts on those counts, petitioners' § 666 convictions "reveal the jury's inconsistency-which is the relevant issue here-even if they do not reveal which theory of liability jurors relied upon in reaching those inconsistent verdicts." Brief for United States 31. In other words, because we do not know what the jury would have concluded had there been no instructional error, Brief for Petitioners 28-29, a new trial on the counts of conviction is in order. Bravo and Martínez have succeeded on appeal to that extent, but they are entitled to no more. The split verdict does not impede the Government from renewing the prosecution.[8]
The Double Jeopardy Clause, as the First Circuit explained, forever bars the Government from again prosecuting Bravo and Martínez on the § 666 -based conspiracy and Travel Act offenses; "the acquittals themselves remain inviolate." 790 F.3d, at 51, n. 6. Bravo and Martínez have also gained "the benefit of their appellate victory," ibid. : a second trial on the standalone bribery charges, in which the Government may not invoke a gratuity theory. But issue preclusion is not a doctrine they can commandeer when inconsistent verdicts shroud in mystery what the jury necessarily decided.
* * *
For the reasons stated, the judgment of the Court of Appeals for the First Circuit is
Affirmed.

The parties use the expression "collateral estoppel component," but as this Court has observed, "issue preclusion" is the more descriptive term. Yeager v. United States, 557 U.S. 110, 120, n. 4, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009) ; see Restatement (Second) of Judgments § 27, Comment b, pp. 251-252 (1980).

Though we earlier recognized that res judicata (which embraces both claim and issue preclusion) applies in criminal as well as civil proceedings, we did not link the issue-preclusion inquiry to the Double Jeopardy Clause. See Sealfon v. United States, 332 U.S. 575, 578, 68 S.Ct. 237, 92 L.Ed. 180 (1948) ; Frank v. Mangum, 237 U.S. 309, 334, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (The principle that "a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties" applies to "the decisions of criminal courts.").

Petitioners were indicted on several other charges not relevant here. See United States v. Fernandez, 722 F.3d 1, 7 (C.A.1 2013).

As the First Circuit acknowledged, this holding is contrary to the rulings of "most circuits to have addressed th[e] issue." Id ., at 6. Three other Federal Courts of Appeals have considered the question; each has held that § 666 prohibits gratuities as well as quid pro quo bribes. See United States v. Bahel, 662 F.3d 610, 636 (C.A.2 2011) ; United States v. Hawkins, 777 F.3d 880, 881 (C.A.7 2015) ; United States v. Zimmermann, 509 F.3d 920, 927 (C.A.8 2007).

As just observed, see supra, at 361 - 362, petitioners urge that § 666 bribery was the sole issue in controversy, and that there was no dispute on other elements of the Travel Act and conspiracy counts. See Tr. of Oral Arg. 4. See also Brief for United States 13 (accepting that the jury "returned irreconcilably inconsistent verdicts"). If another element could explain the acquittals, then there would be no inconsistency and no argument against a new trial on bribery. See infra, at 362 - 363.

Compare United States v. Citron, 853 F.2d 1055, 1058-1061 (C.A.2 1988) (holding that retrial does not violate Double Jeopardy Clause under these circumstances); United States v. Price, 750 F.2d 363, 366 (C.A.5 1985) (same); Evans v. United States, 987 A.2d 1138, 1141-1142 (D.C.2010) (same); and State v. Kelly, 201 N.J. 471, 493-494, 992 A.2d 776, 789 (2010) (same), with People v. Wilson, 496 Mich. 91, 105-107, 852 N.W.2d 134, 141-142 (2014) (holding that Double Jeopardy Clause bars retrial in this situation). As the First Circuit explained, "[a]lthough Citron and Price predate Yeager, both the Second and Fifth Circuits decided that vacated counts are relevant to the Ashe analysis at a time when those circuits had already ruled that hung counts should be disregarded for purposes of the Ashe inquiry." 790 F.3d 41, 51, n. 7 (2015) (citing United States v. Mespoulede, 597 F.2d 329, 332, 335-336 (C.A.2 1979) ; United States v. Nelson, 599 F.2d 714, 716-717 (C.A.5 1979) ). The Second Circuit, moreover, has adhered to Citron since Yeager . See United States v. Bruno, 531 Fed.Appx. 47, 49 (2013).

Nor is this the first time we have looked to a vacated conviction to ascertain what a jury decided in a prior proceeding. Our holding in Morris v. Mathews, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), that a conviction vacated on double jeopardy grounds may be "reduced to a conviction for a lesser included offense which is not jeopardy barred," id., at 246-247, 106 S.Ct. 1032 rested on exactly that rationale. See id., at 247, 106 S.Ct. 1032 (relying on a jeopardy-barred vacated conviction for aggravated murder to conclude that the jury "necessarily found that the defendant's conduct satisfie[d] the elements of the lesser included offense" of simple murder).

A number of lower courts have reached the same conclusion. See Citron, 853 F.2d, at 1059 (If the defendant "was convicted of the offense that is the subject of the retrial," the case is materially different from one with "an acquittal accompanied by a failure to reach a verdict."); Price, 750 F.2d, at 366 (a case in which "the jury returned no verdict of conviction" on the compound count, "but only a verdict of acquittal on the substantive count," is not instructive on whether the Government may retry a defendant after an inconsistent verdict has been vacated); Evans, 987 A.2d, at 1142 ("Yeager does nothing to undermine" the conclusion that a defendant may be retried after an inconsistent verdict is overturned.); Kelly, 201 N.J., at 494, 992 A.2d, at 789 (explaining in the context of retrial following vacatur that "Yeager has no application to a case ... involving an inconsistent verdict of acquittals and convictions returned by the same jury").