DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EDDIE VINCENT RUTLEDGE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3659

[ April 17, 2019 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 502008CF000919AXXXMB.

Carey Haughwout, Public Defender, and Siobhan Helene Shea, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Following the second trial in this case, Eddie Rutledge appeals his convictions and sentences for first-degree murder and conspiracy to commit first-degree murder. We affirm on all issues. We write solely to address appellant's argument that because he was acquitted at his first trial of solicitation to commit murder, collateral estoppel barred the State from introducing evidence that he solicited an acquaintance to murder the victim.

Appellant and his co-defendant, Kenakil Gibson, were charged with first-degree murder with a firearm, conspiracy to commit first-degree murder, and solicitation to commit first-degree murder. Appellant and the co-defendant were tried separately. At appellant's first trial, he was convicted of first-degree murder and conspiracy to commit first-degree murder, but he was acquitted of the solicitation charge. We reversed appellant's convictions in *Rutledge v. State,* 150 So. 3d 830 (Fla. 4th DCA 2014), due to the trial court's error in failing to inquire into a potential conflict between appellant and his counsel.

Appellant proceeded to a second trial on the first degree murder and conspiracy charges. The evidence at the second trial, which was substantially similar to the evidence at the first trial, showed the following facts relevant to this opinion.

On the night of November 25, 2007, the victim, George Mannarino, was shot and killed while standing in the open garage of his home. The victim was scheduled to testify the next day in a burglary case against appellant and the co-defendant. The burglary had occurred at the victim's next door neighbor's home.

The police responded to the scene of the murder. The police found a rifle with an attached scope in some bushes across the street from the victim's home. The State's forensic scientist determined that appellant was a source of DNA profiles on the trigger, trigger guard, and hammer of the rifle.

On the evening of the shooting, one of the victim's neighbors heard a loud sound and saw a male running between some houses across the street. The male then got into the back seat of a dark-colored sedan, which took off quickly.

Another neighbor heard a "pop" and then saw a green Ford Crown Victoria or a Mercury Grand Marquis car coming around the corner with its headlights off and its tires screeching. This neighbor testified that the model year of the car appeared to be between 2000 and 2006. At the time of the murder, appellant owned a green 1999 Mercury Grand Marquis.

Less than one week before the murder, appellant brought a rifle to a gun store and paid to have a scope mounted onto it. The State presented evidence that the rifle appellant brought into the gun store was the same rifle found in the bushes near the crime scene. The State also presented evidence that in 2006 the co-defendant was in possession of the same rifle at his apartment and allowed a friend to have his picture taken with the rifle.

A search of the co-defendant's computers showed that: (1) an internet search for the victim's name was conducted in February 2007, and (2) an internet search for the victim's address was conducted in April 2007.

Over appellant's objection that he had been acquitted of solicitation at the first trial, the State offered testimony that appellant and the co-defendant solicited an acquaintance to murder the victim.

Specifically, the acquaintance testified that, about a week or two before the murder, he was at appellant's house to buy drugs. Appellant told him, in the presence of the co-defendant, that "we need you to kill somebody for us." The acquaintance replied that he did not do such things, but that he "could try to find somebody for you." Appellant took the acquaintance to a computer where he showed him a picture of the victim and the location of the victim's neighborhood. Appellant explained that the victim was the only witness who could identify him and the co-defendant at an upcoming burglary trial. The acquaintance told appellant that what he was asking to be done "might cost a pretty penny." Appellant then asked the co-defendant if he would pay for half the cost, and the co-defendant said "yeah." However, when the acquaintance indicated that he didn't know if he could find someone by the time appellant and the co-defendant "wanted it done," the co-defendant said, "F this, I'll do it myself."

At the conclusion of the second trial, the jury found appellant guilty as charged on both counts.

On appeal, appellant argues that the collateral estoppel component of double jeopardy barred the State from introducing the acquaintance's testimony that appellant solicited him to commit murder, as this testimony was the factual basis for the solicitation charge for which he was acquitted at the first trial.[1] We disagree and conclude that collateral estoppel does not apply under the circumstances of this case.

"Whether collateral estoppel precludes litigation of an issue is reviewed de novo." *Criner v. State*, 138 So. 3d 557, 558 (Fla. 5th DCA 2014).

The doctrine of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). Collateral estoppel "precludes the State from seeking a redetermination of evidentiary facts as well as ultimate facts in order to establish the fact of the crime charged." *Hilaire v. State*, 799 So. 2d 403, 405 (Fla. 4th DCA 2001). Evidence concerning an issue should be excluded under the principle of collateral estoppel where: (1) the issue

---

[1] While appellant never used the magic words "collateral estoppel" below, the substance of appellant's argument was that admitting the acquaintance's testimony about the solicitation would violate double jeopardy principles because appellant was acquitted of solicitation at the first trial. Given that collateral estoppel is a component of double jeopardy, appellant's argument was sufficiently specific to inform the trial court of the alleged error. Thus, the issue was preserved for review.

sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions; (2) the issue was actually litigated in the prior proceeding; and (3) the issue was necessarily decided in the prior proceeding. *Id.*

In *Hilaire*, for example, we held that collateral estoppel barred the State from introducing evidence concerning a crime for which the defendant had previously been acquitted at his first trial, even though the evidence was relevant to prove the defendant's consciousness of guilt on a different charge that was not barred from retrial. *Id.* at 404–06. Thus, as a general proposition, "evidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial." *State v. Perkins*, 349 So. 2d 161, 164 (Fla. 1977).

The collateral estoppel component of the double jeopardy clause does not, however, bar the government from retrying a defendant after a jury has returned irreconcilably inconsistent verdicts of conviction and acquittal, and the convictions are later vacated for legal error unrelated to the inconsistency. *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 362–63 (2016). Stated another way, a defendant cannot meet the burden of demonstrating that an issue was actually decided by a prior jury's acquittal "when the same jury returns irreconcilably inconsistent verdicts on the question she seeks to shield from reconsideration." *Id.* at 359. Thus, an acquittal does not support the application of issue preclusion "when inconsistent verdicts shroud in mystery what the jury necessarily decided." *Id.* at 366.

Here, although collateral estoppel would usually bar evidence of a crime for which appellant was acquitted at a previous trial, we conclude that the jury in the first trial returned a factually inconsistent verdict by acquitting appellant of the solicitation charge while convicting him of the conspiracy charge. Under the facts of this case, the first jury could not have found beyond a reasonable doubt that appellant and the co-defendant had an agreement to murder the victim unless the first jury relied upon the acquaintance's testimony that appellant and the co-defendant solicited him to murder the victim or to hire someone else to do so.

The acquaintance's testimony that appellant and the co-defendant solicited him to kill the victim was the key evidence establishing that appellant and the co-defendant conspired to murder the victim. Although there was other evidence suggestive of a conspiracy between appellant and the co-defendant to murder the victim, the acquaintance's testimony concerning the solicitation was necessary to prove the conspiracy beyond a reasonable doubt. Moreover, it is impossible to separate the

acquaintance's testimony concerning the solicitation from his testimony demonstrating that appellant and the co-defendant conspired to have the victim murdered.

Because the first jury convicted appellant of conspiring with the co-defendant to murder the victim but simultaneously acquitted him of the solicitation that proved the existence of the conspiracy beyond a reasonable doubt, the original verdict was irreconcilably inconsistent. Therefore, applying the rule of *Bravo-Fernandez*, we hold that collateral estoppel did not bar the acquaintance's testimony concerning the solicitation, because the first jury's acquittal on the solicitation charge was factually inconsistent with its conviction on the conspiracy charge.

In short, appellant's acquittal of the solicitation charge at the first trial did not have issue-preclusive effect, because the first jury's inconsistent verdict shrouded in mystery what the first jury necessarily decided. Thus, under the circumstances of this case, the State was not barred from introducing testimony about the solicitation to establish that appellant and the co-defendant conspired to murder the victim.

*Affirmed.*

GERBER, C.J., and KUNTZ, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***