# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,    )
           )
           )
    v.      )   I.D. No. 1911014417
           )
JOSE TERREROS,     )
           )
    Defendant.   )

Submitted: September 9, 2021
Decided: November 29, 2021

*Upon Consideration of Defendant's Motion for Judgment of Acquittal*,
**DENIED.**

## MEMORANDUM OPINION

Matthew C. Buckworth, Esquire, and Erika R. Flaschner, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorneys for the State of Delaware*.

Brett A. Hession, Esquire, and Erika B. LaCon, Esquire, Assistant Public Defenders, OFFICE OF DEFENSE SERVICES, Wilmington, Delaware. *Attorneys for Defendant Jose Terreros*.

**BUTLER, R.J.**

BACKGROUND

The Defendant resided with the four-year-old child victim and her mother. On the evening of November 19, 2019, the victim's mother returned from a trip to the grocery store when her daughter told her the Defendant had "licked [her] cola," which mother and daughter understood to mean her vaginal area. Mother immediately contacted the police and the child was taken to the A.I. duPont Hospital, where she essentially repeated the allegation to the Children's Advocacy Center.

A New Castle County grand jury indicted the Defendant on three charges, but only two are relevant here: First Degree Rape ("Rape I") and First Degree Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision ("Child Sexual Abuse I"). The State's case included the child victim's direct accusation and live testimony as well as evidence that the Defendant had undertaken numerous internet searches to determine how to detect if a girl has been raped, how long fingerprints stay on sheets, and how long saliva stays on the body. After trial, the jury found the Defendant guilty of Child Sexual Abuse I, but not guilty of Rape I.

The Defendant says the acquittal on Rape I means the Court must now direct a verdict of acquittal on the charge of Child Sexual Abuse I as well. Rape I requires proof of prohibited sexual intercourse, while Child Sexual Abuse I requires proof of prohibited sexual intercourse plus a special relationship. By convicting on Child Sexual Abuse I, Defendant argues, the jury necessarily found that prohibited sexual

intercourse occurred. The logical inconsistency with the Rape I acquittal, he insists, is a legal error attributable to a defect in the Child Sexual Abuse I verdict that renders his conviction invalid.

## ANALYSIS

There is no question that oral contact with the genitalia of a female is "sexual intercourse."[1] When the sexual intercourse is with a child less than 12 years of age by an individual over the age of 18, it is Rape I.[2] In 1971, 18 states considered rape a capital offense.[3] It was not until 1977 that the U.S. Supreme Court ruled that imposing death for rape violated the Eighth Amendment.[4] The point is, rape has historically connoted a very serious charge carrying very serious consequences.

In contrast, Child Sexual Abuse I is of substantially more recent vintage and was unknown to the Model Penal Code of 1962[5] (which Delaware adopted in 1972). The crime appears to have been the legislature's response to the infamous case of Earl Bradley, a former Delaware physician who sexually abused and raped his

---

[1] *See* 11 *Del. C.* § 761(b), (h) (2020).
[2] *Id.* § 773(a)(5).
[3] *See generally Coker v. Georgia*, 433 U.S. 584, 593 (1977).
[4] *Id.* at 593, 597–600.
[5] *Compare* Model Penal Code § 213.1(1)(d) (1962) (defining rape and including minors as protected class but omitting from elements a special relationship between perpetrator and victim), *with* 11 *Del. C.* § 778 (defining sexual abuse of a child by a person in a position of trust, authority or supervision).

3

pediatric patients.[6]  Child Sexual Abuse I requires proof of sexual intercourse with a child under the age of 16 by a person in a position of "trust, authority or supervision" with or over the child.[7]  While it "sounds" serious, its novelty in the public media makes the casual observer unaware of its equally serious sentencing consequences.[8]

On the evidence presented in this case, a Child Sexual Abuse I conviction is inconsistent with a Rape I acquittal.  But to say they are inconsistent is not to conclude they cannot stand as the verdicts of the jury.

## A.  Inconsistent Verdicts Do Not Necessarily Result in Acquittal.

Delaware inconsistent verdict law was well summarized by Resident Judge Karsnitz recently in *State v. Wilkerson.*[9]  Reviewing the evolving history of inconsistent verdicts requires us to parse a distinction between the "*Powell-Tilden*" line of cases, which consider only the sufficiency of the evidence and attribute inconsistent verdicts to jury lenity, and the "*Johnson-Priest*" line of cases, which concern the effect of inconsistent verdicts on "predicate-compound" crimes.[10]

---

[6] *See generally* 11 *Del. C.* § 778 (codified in 2010); *Bradley v. State*, 51 A.3d 423 (Del. 2012) (affirming conviction in case that began in 2009).

[7] 11 *Del. C.* §§ 761(e) (definition), 778(1) (substantive offense).

[8] *See, e.g., id.* § 778(6)(a)(1)–(2) (imposing, under certain conditions, life imprisonment as a mandatory sentence).

[9] 2021 WL 4075018 (Del. Super. Ct. Sept. 7, 2021).

[10] *See id.* at *2–4 (discussing distinction and collecting cases).

While the *Johnson-Priest* line of cases offer potential relief for a defendant who has received inconsistent verdicts, the *Powell-Tilden* line does not.

### 1. Rape I is Not a Predicate to Child Sexual Abuse I.

The *Johnson-Priest* line controls cases in which the jury convicts on a compound offense, but acquits on its predicate offense (*e.g.*, an acquittal of robbery but a conviction of possession of a firearm during commission of the robbery). An acquittal on a predicate offense negates a conviction on its compound offense. To lay the cornerstone for a *Johnson-Priest* analysis, the Defendant argues his Rape I acquittal operates as if it were an unfulfilled predicate to his Child Sexual Abuse I conviction. So this would be a good time to consider *Priest* a bit more carefully.[11]

In *Priest*, the defendant was convicted of possessing a firearm during the commission of a felony ("PFDCF") but acquitted of the underlying felony. Applying sufficiency-of-the-evidence review, the trial court denied the defendant's

---

[11] *Priest v. State*, 879 A.2d 575 (Del. 2005). The Court focuses on *Priest* because *Johnson v. State*, 409 A.2d 1043 (Del. 1979) (per curiam), is less illuminating. Although *Priest* called *Johnson* "a later case," 879 A.2d at 586, *Johnson* is a pre-*Powell-Tilden* decision. So *Johnson* did not invoke lenity-plus-sufficiency review. Instead, and without much discussion, *Johnson* reversed a conspiracy to commit burglary conviction, which followed an acquittal of the underlying burglary, on the ground that the conspiracy depended on the burglary for an overt act. Both *Tilden* and *Priest* understood this reasoning to establish the predicate-compound analysis that *Tilden* distinguished and with which *Priest* aligned itself. *See Priest*, 879 A.2d at 856–57; *Tilden v. State*, 513 A.2d 1302, 1306–07 (Del. 1986).

5

motion for acquittal of the PFDCF charge.[12]  But on direct appeal, the Supreme Court reversed.  It explained that, because a PFDCF conviction presupposes a predicate felony conviction, PFDCF convictions are "all or nothing."[13]  As a result, the defendant's acquittal of the predicate felony "foreclosed" his conviction of PFDCF, regardless of the sufficient evidence supporting it.[14]

For *Priest*, word choice mattered.  The PFDCF statute creates a predicate-compound structure by tying a PFDCF conviction to another felony conviction:

> A person who is in possession of a firearm during the commission of a felony is guilty of possessing a firearm during the commission of a felony . . . . A person may be found guilty of violating this section notwithstanding . . . the felony for which the person is convicted . . . .[15]

Using statutory construction tools, the Supreme Court understood this limitation to mean that, in cases of verdict inconsistency, application of lenity and sufficiency-of-the-evidence review "would contravene the public policy" of the PFDCF statute by relieving the State of its burden of proving a predicate felony.[16]  In other words, the

---

[12] *See State v. Fletcher*, 2004 WL 1284214, at \*2 (Del. Super. Ct. May 25, 2004), *rev'd in pertinent part sub nom.*, *Priest*, 879 A.2d 575.

[13] *Priest*, 879 A.2d at 583.

[14] *Id.*

[15] 11 *Del. C.* § 1447A(a), (g) (subsections and cross-references omitted).

[16] *Priest*, 879 A.2d at 584.  The *Priest* court found "the only inconsistency that the statute expressly contemplates and allows is the inconsistency which arises where the jury finds the defendant guilty of a lesser-included offense of a predicate felony charged in the indictment."  879 A.2d at 583 (citing 11 *Del. C.* § 1447A(g)).

Supreme Court held that the legislature intended to abrogate common law inconsistent verdict doctrines in the predicate-compound offense context.[17]

> In the PFDCF statute, the General Assembly opted to create an offense that punishes one who uses a firearm while committing a felony. As a result, the PFDCF statute and its counterpart modify the common law by proscribing jury lenity and sufficiency-of-the-evidence review. To allow Priest's weapons-possession convictions to stand in the face of an outright acquittal on the predicate felony would undermine the plain language of the PFDCF statute . . . . Ultimately, judicial deference to the factfinder . . . cannot super[s]ede the judiciary's primary obligation to give effect to the General Assembly's formulation of the criminal law.[18]

So *Priest* stands for two propositions that undermine the Defendant's reasoning.

First, common law inconsistent verdict doctrines, such as lenity-plus-sufficiency, apply unless (1) the two offenses are statutorily defined as predicate-compound offenses; and (2) the jury acquits of the predicate offense. Here, as the Defendant eventually concedes,[19] Rape I is not a statutory predicate to Child Sexual Abuse I, even if they have some key elements in common. Rape I includes, but is not limited to, sexual intercourse with a child.[20] Child Sexual Abuse I is limited to

---

[17] *Id.* at 583–84, 589–90. Consistent with this ruling, Resident Judge Karsnitz in *Wilkerson* granted acquittal after applying *Johnson-Priest* review to a conviction of Endangering the Welfare of a Child where the jury acquitted the defendant of the predicate offenses that had to be committed in the presence of the child for the Endangering charge to attach. 2021 WL 4075018, at *4.

[18] *Priest*, 879 A.2d at 589–90.

[19] Def.'s Mot. for J. Acquittal ¶ 21.

[20] *Compare* 11 *Del. C.* § 773(a)(5), *with id.* § 773(a)(1)–(4). To be sure, the Defendant was charged with Rape I's child provision, not Rape I generally. But the *Johnson-Priest* analysis, unlike a *Powell-Tilden* analysis, is fact indifferent. To determine whether the *Johnson-Priest* framework governs, courts take a categorical

child sexual intercourse; it does not include adult rape.[21] Taken together, each offense requires proof of a shared fact (*i.e.*, sexual intercourse), but neither statute imposes as a legal element a predicate conviction on the other.[22] Contextualized, Child Sexual Abuse I is not the kind of "all or nothing" offense *Priest* imagined.

Second, legislative intent guides in determining whether an inconsistent conviction may stand. The General Assembly's intent in the PFDCF statute is to

---

approach and ask whether, in the abstract, the statute of conviction depends for its validity on a predicate conviction. The State's chosen evidence, and the sufficiency of it, are not relevant here. *Compare Tilden*, 513 A.2d at 1307 ("[T]he controlling standard for testing a claim of inconsistent verdicts is the rule of lenity . . . coupled with the sufficiency of evidence standard."), *with Priest*, 879 A.2d at 586–87 ("[A] multiple-count verdict that includes . . . a compound offense, even if factually inconsistent, must stand where the verdict reflects jury lenity *and* where the jury has convicted on a [predicate] felony."), *and Priest*, 879 A.2d at 589 ("Given the statutory limitation on judicial review, the acquittal [of the predicate felony] removed from the jury's consideration the very conduct" for which the defendant was charged.). *See also Washington v. State*, 2012 WL 3039725, at *2 (Del. July 25, 2012) (rejecting *Priest* challenge to first degree robbery and PFDCF verdicts because they were not "legally inconsistent" and declining to review the evidence relating to the weapons).

[21] *See* 11 *Del. C.* § 778(1)–(5).

[22] *See Morris v. State*, 2019 WL 2123563, at *4 (Del. May 13, 2019) ("[Morris] argues that a finding of guilt on the rape charge was a predicate to a finding of guilt on the home-invasion charge. Since the jury was unable to reach a verdict on the rape charge, he argues, [the violent felony] element of the home-invasion charge was not proved and the verdicts were inconsistent . . . . It should first be noted that a *conviction* for rape or attempted rape is not an element of the offense of home invasion. The element of home invasion in issue is the fact of the commission or attempted commission of rape . . . . Because [the] evidence is sufficient to sustain the conviction of home invasion, any inconsistency between the guilty verdict on the charge of home invasion and the jury's failure to agree on the charge of rape in the first degree is of no avail to Morris . . . ." (emphasis added)).

8

confine PFDCF convictions to cases in which a predicate felony is proven. Here, the Rape I and Child Sexual Abuse I statutes reflect the opposite intent. Neither statute "preclude[s] a separate charge, conviction and sentence for any other crime set forth in [Title 11], or in the Delaware Code."[23] Thus, unlike the PFDCF statute under consideration in *Priest*, the public policy expressed in these statutes is to *expand* the categories of liability, not to restrict them.

In sum, neither offense "fits" the predicate-compound formula necessary for triggering a *Johnson-Priest* analysis. So the Defendant's attempt to shoehorn the inconsistency in the verdicts into the *Johnson-Priest* line of cases, understandable though that may be, does not work. The *Johnson-Priest* cases are inapposite here. Instead, this case falls within the more traditional *Powell-Tilden* line of cases.

## 2. Lenity, Coupled with Sufficiency-of-the-Evidence Review, Applies.

The *Powell-Tilden* cases, which trace their lineage back to the 19th century, hold that, if an inconsistent verdict, however determined, is supported by sufficient evidence, then it must be accorded the same deference a consistent verdict enjoys.[24]

---

[23] 11 *Del. C.* §§ 773(b), 778(7). *See also Clark v. State*, 65 A.3d 571, 577–78 (Del. 2013) ("When construing a statute, we attempt to ascertain and give effect to the General Assembly's intent. If we determine that a statute is unambiguous, we give the statutory language its plain meaning." (internal quotation marks and citations omitted)).

[24] *E.g.*, *Graham v. State*, 2017 WL 4128495, at *2–3 (Del. Sept. 18, 2017) (outlining *Powell-Tilden* framework); *see also Dennison v. State*, 2007 WL 1837004, at *3 (Del. June 25, 2007) ("A criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence by

9

Approving a verdict that may have been the result of some misadventure by the jury is not, as the defense calls it, "a shrug of the judicial shoulders."[25]  Jury deliberations are sacrosanct.  Prying into a juror's "logic" is to presume that a jury verdict must be logical.  That is not the law.[26]  The prosecution may charge improperly, evidence may be received improperly, the case may be improperly argued, or the judge may improperly instruct the jury.  All these errors can be remediated before the door to the jury room closes.  But once the case belongs to the jury, courts are loath to question their deliberations or their verdict.  After all, a "verdict brings . . . needed finality" to the criminal process.[27]  An inconsistent verdict is no exception.[28]

---

the trial and appellate courts." (alteration and internal quotation marks omitted)); *see generally Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Consistency in a verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." (citing *Latham v. The Queen*, 122 Eng. Rep. 968, 971 (Q.B. 1864))).

[25] Def.'s Mot. for J. Acquittal ¶ 27 (internal quotation marks omitted).

[26] *See, e.g.*, *Bravo–Fernandez v. United States*, 137 S. Ct. 352, 360, 364 (2016) (explaining that irrational verdicts are permissible if supported by sufficient evidence); *Tilden*, 513 A.2d at 1306 ("If the inconsistency can be explained in terms of jury lenity, the convictions may stand."); *see also Yaeger v. United States*, 557 U.S. 110, 122–23 (2009) ("Even if the verdict is based on an egregiously erroneous foundation, its finality is unassailable." (internal quotation marks and citation omitted)).

[27] *Yaeger*, 557 U.S. at 124 (internal quotation marks omitted).

[28] *See Tilden*, 513 A.2d at 1306 (observing that jury verdicts are "insulated . . . from judicial review on the basis of inconsistency"); *see also Graham*, 2017 WL 4128495, at *2 ("[I]nconsistency alone does not warrant a new trial or reversal.").

This is not to say that an inconsistent verdict is cause for celebration. The law prides itself on its logic and its experience.[29] Even so, the specific rationale used by the jury in making its determination need not track the logic of the Court's instructions or the "logic" as seen by the lawyers. Once it begins its deliberations, the jury is its own power on the facts and the law and despite a court's entreaties that the jury follow the instructions imparted to them, a jury that fails to do so is not subject to sanctions and its logic—or lack thereof—cannot be second guessed.[30]

Some of our cases call the jury's refusal to convict on a serious charge an exercise of lenity. Given the historically serious sanctions associated with the crime of "rape," that is one conclusion one might draw. But truthfully, that is just a hypothesis; a jury does not announce the rationale for its decision in open court. It "speaks only through its verdict."[31] It says nothing more.

True, courts do not inquire further. But there is a reason for that. Courts cannot join the jury in discussing the evidence. So, absent jury-room surveillance,

---

[29] *Compare* Sir Edward Coke, 1 *The First Part of the Institutes of the Laws of England* § 138, at 97b (Francis Hargrave & Charles Butler eds., 19th ed. 1832) (1628) ("Reason is the life of the law, nay the common law itself is nothing but reason . . . ."), *with* Oliver Wendell Holmes Jr., *The Common Law* 1 (1881) ("The life of the law has not been logic: it has been experience.")

[30] *See, e.g.*, *Harris v. Rivera*, 454 U.S. 339, 345–46 (1981) ("Inconsistency in a verdict is not a . . . reason for setting it aside . . . . [And the] power of a jury to return a verdict . . . for impermissible reasons" is "unreviewable." (citations omitted)).

[31] *See, e.g.*, *Bravo–Fernandez*, 137 S. Ct. at 360 (internal quotation marks omitted).

11

courts would be left to speculate. We generally do not do that.[32] Indeed, the premise animating the Defendant's arguments demonstrates the perils of judicial guesswork. A court might assume, as the Defendant does, that the acquittal is the jury's "true verdict." But another court might assume the conviction is the jury's true verdict.[33] Such a flip-of-the-coin approach would trivialize the very issues to which the Defendant ascribes constitutional magnitude.[34]

---

[32] *E.g.*, *Yaeger*, 557 U.S. at 124 (Determining the basis for an inconsistent verdict "would require speculation into what transpired in the jury room. Courts properly avoid such explorations into the jury's sovereign space, . . . and for good reason. The jury's deliberations are secret and not subject to outside examination." (internal quotation marks and citations omitted)); *Powell v. United States*, 469 U.S. 57, 66 (1984) ("[A]n individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."); *Dunn*, 284 U.S. at 394 ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.").

[33] *E.g.*, *Grimes v. State*, 188 A.3d 824, 829 (Del. 2018) ("Grimes would have us credit the acquittal over the conviction—treating the acquittal as the jury's true verdict and the conviction as just a windfall to the State at his expense—but as we have recognized, it is equally possible in a scenario like this that the jury, convinced of guilt, properly reached its conclusion on the [conviction], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [acquittal]. When a jury produces an irreconcilable verdict, it is unclear whose ox has been gored . . . ." (cleaned up)); *Priest*, 879 A.2d at 585 (rejecting premise underlying inconsistent verdict challenge as "not necessarily correct" because acquittal verdict may not be "the one the jury really meant" and "all we know is the verdict is inconsistent" (internal quotation marks omitted)); *see Powell*, 469 U.S. at 65–66 ("[T]he possibility that the inconsistent verdicts may favor the . . . defendant as well as the Government militates against review of such convictions at the defendant's behest . . . . The fact that the inconsistency may be the result of lenity . . . suggests that inconsistent verdicts should not be reviewable.").

[34] *See* Def.'s Mot. for J. Acquittal ¶¶ 29–32.

The Delaware Supreme Court has opted instead for a more reliable method. It has ruled that, so long as there is sufficient evidence to sustain the conviction for the charge on which the defendant is convicted, the fact that he is acquitted on other charges that he could have been convicted on based on the same facts is of no moment.[35] This places the Court back on the *terra firma* of analyzing the sufficiency of the evidence for the conviction, not of some insufficiency that brought acquittal.[36]

## B. Sufficient Evidence Supports the Child Sexual Abuse I Conviction.

The child victim in this case testified, with considerable trepidation, that the defendant committed the acts in question. The interviewer from the Children's Advocacy Center testified to the child's statements to that office. The Defendant's internet searches were introduced into evidence, as was his disappearance on the night of the incident when mother called the police. The Court has no hesitance in concluding that there was sufficient evidence upon which a reasonable jury could have convicted the defendant of the two charges of conviction. The fact that he was acquitted on another charge on which he might also have been convicted is either

---

[35] *E.g., King v. State*, 2015 WL 5168249, at *2 (Del. Aug. 26, 2015) ("Under the rule of jury lenity, [the] Court may uphold a conviction that is inconsistent with another jury verdict if there is legally sufficient evidence to justify the conviction.").

[36] *Powell*, 469 U.S. at 67 ("Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient." (citations omitted)).

due to lenity, error, or some other factor.  As the U.S. Supreme Court said many years ago, "verdicts cannot be upset by speculation or inquiry into such matters."[37]

## CONCLUSION

For the foregoing reasons, the Defendant's motion for judgment of acquittal must be **DENIED**.

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

---

[37] *Dunn*, 284 U.S. at 394.