*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

MICHAEL MANUEL JACKSON-BOLANOS,

Defendant-Appellee.

UNPUBLISHED
October 17, 2025
9:52 AM

No. 372263
Wayne Circuit Court
LC No. 24-000535-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL MANUEL JACKSON-BOLANOS,

Defendant-Appellant.

No. 372604
Wayne Circuit Court
LC No. 24-000535-01-FC

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), felony murder, MCL 750.316(1)(b), first-degree home invasion, MCL 750.110a(2), and lying to a peace officer, MCL 750.479c(1)(b) and (2)(c). Following trial, the jury acquitted defendant of premeditated murder and found defendant guilty of lying to a peace officer. In acquitting defendant of first-degree murder, the jury also declined to find defendant guilty of the lesser-included offense of second-degree murder, on which the jury had also been instructed. The jury declared that it was deadlocked and unable to reach a verdict on the felony-murder and first-degree home invasion counts. The trial court declared a mistrial on those charges.

The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 18 months to 15 years' imprisonment. On the same day, the trial court granted defendant's motion

-1-

to dismiss the counts for felony murder and first-degree home invasion with prejudice on double-jeopardy grounds, ruling that the prosecution could not retry those counts.

In Docket No. 372263, the prosecutor appeals as of right from the trial court's order granting defendant's motion to dismiss the charges of felony murder and first-degree home invasion. In Docket No. 372604, defendant appeals as of right from his judgment of sentence.[1] The appeals have been consolidated.[2] For the reasons set forth in this opinion, we affirm the trial court's order dismissing the felony-murder and first-degree home invasion charges, affirm defendant's conviction, and remand for the limited purpose of modifying and amending the presentence investigation report consistent with this opinion.

I. BACKGROUND

This case arises out of the death of Samantha Woll. Woll attended a wedding in Sterling Heights, Michigan on the evening of October 20, 2023. There was evidence suggesting that she likely returned from the wedding to her home in Detroit, Michigan, at about 12:30 a.m. Evidence collected from Woll's cell phone indicated that she did not use her phone after approximately 1:35 a.m. Cell phone location evidence was consistent with Woll's phone being continuously in her residence from approximately 12:30 a.m. to 4:29 a.m. Woll's home security system showed that Woll's front door was opened at 12:31 a.m. on October 21, 2023, and motion in the living room was detected a minute later. The system detected that the back door was opened at 12:35 a.m. and closed at 12:38 a.m. At 1:01 a.m., the system recorded that the front door was still open. The system detected motion in the living room area at 4:20 a.m., and the system went into "idle" mode at 4:22 a.m. There was testimony that this meant that the motion in the living room would have stopped no later than 4:22 a.m.

Woll's body was discovered on the sidewalk outside her home by neighbors early on the morning of October 21, at approximately 6:20 a.m.; she was already deceased. There was a trail of blood on the sidewalk from Woll's home to the spot where her body was found, and the body was "covered in blood." The medical examiner determined that Woll died as a result of multiple sharp-force injuries to her neck, face, head, and upper back, and the medical examiner concluded that Woll's death was a homicide.

During the investigation of the crime scene, police found a vehicle in a nearby parking lot with tires that appeared to have been cut with a knife. Surveillance video from an elementary school recorded during the early morning hours of October 21 captured an individual walking toward Woll's home and toward the parking lot where the vehicle with slashed tires had been

---

[1] This Court granted defendant's motion to expedite his appeal in Docket No. 372604. *People v Jackson-Bolanos*, unpublished order of the Court of Appeals, entered May 14, 2025 (Docket No. 372604).

[2] *People v Jackson-Bolanos*, unpublished order of the Court of Appeals, entered September 25, 2024 (Docket Nos. 372263 and 372604).

discovered. The surveillance video showed the individual opening a vehicle door, going into the vehicle, and carrying some kind of bag.

Using a combination of cell phone tower location data and various closed-circuit video surveillance cameras located throughout the metropolitan Detroit area, the police were able to determine that beginning at approximately 12:35 a.m. on October 21, defendant travelled from an apartment where he lived with his girlfriend to the area of Woll's residence, where he remained from about 3:50 to 4:20 a.m., and back to defendant's girlfriend's apartment by about 4:54 a.m.

Defendant was arrested and interviewed by Detective Patrick Lane and Sergeant Steven Ford. Near the beginning of the interview, Detective Lane told defendant that he was being questioned about some cars that had been broken into in downtown Detroit. Defendant initially denied committing any such acts. However, during his trial testimony, defendant admitted that he lied in that regard during his police interview. Defendant also admitted during his trial testimony that he was walking around that night and that he was checking car door handles and going into unlocked cars. Defendant testified that while he was out, he came across the victim lying outside, put his hand on her neck, and found that she was dead. Defendant decided not to call the police because he did not want to explain that he had been breaking into cars in the area. He denied killing Woll.

## II. DOCKET NO. 372263

In Docket No. 372263, the prosecution appeals the trial court's ruling dismissing the felony-murder and first-degree home invasion charges with prejudice on double-jeopardy grounds.

## A. STANDARD OF REVIEW

"A double-jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

## B. ANALYSIS

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits "any person" from being "subject for the same offence to be twice put in jeopardy of life or limb." US Const, Ams V and XIV; *Benton v Maryland*, 395 US 784, 787; 89 S Ct 2056; 23 L Ed 2d 707 (1969). The analogous provision of the Michigan Constitution similarly provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. The Michigan Supreme Court has held that the Double-Jeopardy Clause of Michigan's Constitution was adopted with the intent that it "would be construed consistently with Michigan precedent and the Fifth Amendment," *People v Nutt*, 469 Mich 565, 591; 677 NW2d 1 (2004), and that the meaning of Michigan's Double Jeopardy Clause has been accurately conveyed by interpretations of the Fifth Amendment. *Ream*, 481 Mich at 227 n 1. "[S]tate courts are bound by United States Supreme Court decisions construing federal law, including the Constitution." *People v Lewis*, 501 Mich 1, 7; 903 NW2d 816 (2017) (quotation marks and citation omitted).

The "the underlying premise" of the principle of double jeopardy is "that a defendant should not be twice tried or punished for the same offense." *United States v Wilson*, 420 US 332, 339; 95 S Ct 1013; 43 L Ed 2d 232 (1975). The Double Jeopardy Clause thus provides three general protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. [*Id*. at 343 (quotation marks and citation omitted).][3]

Additionally, there is an "issue-preclusion component" of the Double Jeopardy Clause. *Bravo-Fernandez v United States*, 580 US 5, 7; 137 S Ct 352; 196 L Ed 2d 242 (2016). "In criminal prosecutions, as in civil litigation, the issue-preclusion principle means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Id*. at 7-8, quoting *Ashe v Swenson*, 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970). The "doctrine of issue preclusion ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment." *Id*. at 10.

More specifically, "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v United States*, 557 US 110, 119; 129 S Ct 2360; 174 L Ed 2d 78 (2009). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment of acquittal, it cannot again be litigated in a second trial for a separate offense." *Id*. (quotation marks and citation omitted). " '[A] verdict of acquittal [in our justice system] is final,' the last word on a criminal charge, and therefore operates as 'a bar to a subsequent prosecution for the same offense.' " *Bravo-Fernandez*, 580 US at 9, quoting *Green v United States*, 355 US 184, 188; 78 S Ct 221; 2 L Ed 2d 199 (1957) (alterations in original). If a trial involves multiple counts and "a jury returns inconsistent verdicts, convicting on one count and acquitting on another count, where both counts turn on the very same issue of ultimate fact[,]" the United States Supreme Court has held that "both verdicts stand." *Bravo-Fernandez*, 580 US at 8. "The Government is barred by the Double Jeopardy Clause from challenging the acquittal, . . . but because the verdicts are rationally irreconcilable, the acquittal gains no preclusive effect . . . ." *Id*.

However, in *Yeager*, the United States Supreme Court addressed the question "whether an apparent inconsistency between a jury's verdict of acquittal on some counts and its failure to return a verdict on other counts affects the preclusive force of the acquittals under the Double Jeopardy Clause of the Fifth Amendment" and held "that it does not." *Yeager*, 557 US at 112. The Court explained that "for double jeopardy purposes, the jury's inability to reach a verdict on [some]

---

[3] See also *Nutt*, 469 Mich at 574 ("The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense. . . . The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.").

counts [is] a nonevent and the acquittals on [other] counts are entitled to the same effect as [any other] acquittal." *Id*. at 120. Reasoning that a "hung count is not a relevant part of the record of [the] prior proceeding" because "a jury speaks only through its verdict" and "its failure to reach a verdict" therefore "cannot—by negative implication—yield a piece of information that helps put together the trial puzzle," the Court held that the "consideration of hung counts has no place in the issue-preclusion analysis" regarding the acquitted counts and plays "no part in assessing the legal consequences of a unanimous verdict that the jurors did return." *Id*. at 121-122 (alteration in original; quotation marks and citation omitted).

In *Yeager*, the defendant was tried by a jury on charges involving allegations of securities fraud, wire fraud, and insider trading. *Id*. at 113-114. The jury acquitted the defendant of the fraud counts but became deadlocked on the remaining insider trading counts, which resulted in a mistrial on the hung counts. *Id*. at 114-115.

While acknowledging the general rule that a defendant may be retried on hung counts without offending the Double Jeopardy Clause, the *Yeager* Court explained that when there were simultaneous verdicts of acquittal issued by the same jury, the question became "whether the interest in preserving the finality of the jury's judgment on the fraud counts, including the jury's finding that petitioner did not possess insider information, bar[red] a retrial on the insider trading counts." *Id*. at 118-119. Because "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial," the analysis therefore required determining what issues were necessarily decided by the jury. *Id*. at 119-123. The Court explained:

> To decipher what a jury has necessarily decided, . . . courts should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. . . . [T]he inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." [*Id*. at 119-120 (quotation marks and citations omitted).]

The *Yeager* Court concluded:

> To identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide. A jury's verdict of acquittal represents the community's collective judgment regarding all the evidence and arguments presented to it. Even if the verdict is based upon an egregiously erroneous foundation, its finality is unassailable. Thus, *if the possession of insider information was a critical issue of ultimate fact in all of the charges against petitioner, a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element*. [*Id*. at 122-123 (quotation marks and citations omitted; emphasis added).]

The *Yeager* Court thus concluded that the acquittals on the fraud counts were entitled to the same preclusive effect as an acquittal in a trial involving a single charged offense, *id*. at 120, and that "acquittals *can* preclude retrial on counts on which the same jury hangs," *id*. at 125

(emphasis added). Hence, the lower court was permitted on remand to determine under the proper framework whether the jury had necessarily decided the issue regarding the defendant's possession of insider information. *Id*. at 125-126.

In the present case, as the prosecution concedes, this Court is bound by *Yeager* and we must therefore apply the *Yeager* analytical framework to determine whether retrial on the hung counts of felony murder and first-degree home invasion is barred by the Double Jeopardy Clause.

We first consider the felony-murder charge. As our Supreme Court has explained:

> Murder is a common-law offense, defined as the unlawful killing of one human being by another with malice aforethought. The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.
>
> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. The malice element for depraved heart murder is general mens rea. [*People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998) (citations omitted).]

Furthermore:

> > The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated . . . .
>
> The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. Malice may also be inferred from the use of a deadly weapon. [*People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999) (citations omitted; alteration in original).]

Here, as the prosecution acknowledges on appeal, the jury acquitted defendant of second-degree murder and therefore necessarily found that defendant did not commit murder with malice, which is also a necessary element of establishing felony murder.[4] *Id*.; *Goecke*, 457 Mich at 463-464; *Yeager*, 557 US at 119-120. See also *People v Reichard*, 505 Mich 81, 87; 949 NW2d 64 (2020) (stating that the felony-murder statute "operates only to elevate a second-degree murder to first-degree murder if it was committed in the commission of one of the enumerated felonies"). Therefore, the prosecution is prohibited by the Double Jeopardy Clause from retrying defendant

---

[4] The prosecution contends that *Yeager* was wrongly decided but acknowledges that this Court is bound by *Yeager* with respect to the application of the Fifth Amendment Double Jeopardy Clause.

on the felony-murder charge. *Yeager*, 557 US at 112, 119, 122-123. The trial court's ruling thus was not erroneous.

Next, we turn to the first-degree home invasion charge. The prosecution argues on appeal that even under *Yeager*, retrial on the first-degree home invasion charge is not barred by the Double Jeopardy Clause. As we have already explained, resolving a question such as this requires us to begin by determining what the jury "necessarily decided" in its acquittal verdict through "examin[ing] the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter" to reach a conclusion "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Yeager*, 557 US at 119-120 (quotation marks and citation omitted). "[T]he inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Id*. at 120 (quotation marks and citation omitted). If an essential element of first-degree home invasion also was a "critical issue of ultimate fact" that was necessarily decided in defendant's favor by the jury, then defendant may not be retried for first-degree home invasion. *Id*. at 123.

The offense of first-degree home invasion is defined in MCL 750.110a(2), which provides as follows:

> (2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

During closing argument, the prosecuting attorney explained the prosecution's theory of how the relevant crimes were committed during the early morning hours of October 21:

> Now, I can't tell you what exactly happened inside of Samantha Woll's apartment, inside her home on October 21st of 2023. I can't tell you exactly what happened, but you don't need to know exactly what happened to know that she was murdered and to know that the defendant is the murderer.
>
> And although I can't tell you exactly what happened, it's not hard to imagine it either. She gets back from that wedding that night. She gets settled in. She falls asleep, doesn't realize that that door was left open.

And meanwhile, we have this creeper in the night prowling around her neighborhood, looking for every opportunity to find -- to take things that weren't his to take, to go into spaces that weren't his to be in.

And at some point, as he's methodically searching each and every single car in that area, based on his own admissions, he sees that door open and decides to go inside.

And imagine the horror of Samantha Woll's last moments on this earth. She wakes up to this masked man inside her home in the middle of the night, and something happened. Something happened. He decided to subdue her with an outburst of violence, and he got the heck out of there.

And she, as the blood starts flowing, stumbles around, probably confused, probably in shock, and in the last second, in a desperate cry for help, stumbles outside toward her neighbor's door, where she collapses and dies there on the ground. It's not hard to imagine that scenario at all.

Now, this is a case about coincidences. It's a case about common sense. And when you use that common sense, and you look at the coincidences in this case, there's simply too many coincidences, too many coincidences to suggest that anyone other than the defendant killed her.

\* \* \*

What makes sense is that he went in there, he didn't expect to find her, something happened, and she paid with that for her life [sic].

\* \* \*

. . . Common sense tells us that it takes a matter of seconds to inflict eight stab wounds, a matter of seconds.

Moreover, the prosecutor stated that the first-degree home invasion offense was "assaulting Samantha Woll inside of her home after entering that home without permission" and that the charge was "based on the idea that he did not have permission to enter the home and he entered that home, Samantha Woll was there, and he assaulted her inside that home." The prosecutor further argued in closing rebuttal argument:

The timeline is that the only time that motion is detected in her home after her phone stops being used, the defendant's right there. And then as he's leaving, he's got her blood on him.

That timeline is intact. It is a commonsense timeline to convict him.

\* \* \*

-8-

And then, you know, when we talk about the defendant and this idea that his intent, in going through that front door, was to take something -- again, the defense continues to circle back on nothing was taken, nothing was taken, so therefore this wasn't a home invasion, this wasn't a attempted larceny.

Once what happened inside that home happened, he had every reason not to take something. You think he's going to want to get caught with a murder victim's laptop, or a murder victim's wallet, or a murder victim's phone?

He had every reason to get out of there quickly, which is exactly what all of the evidence suggests that he did.

During final jury instructions, the trial court instructed the jury in relevant part as follows:

Now, it is my duty to instruct you on the law, and you must take the law as I give to you. If a lawyer said something different about the law, follow what I say.

\* \* \*

In Count 1, the defendant is charged with the crime of First-Degree Felony Murder. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant caused the death of Samantha Heather Woll, that is, that Samantha Heather Woll died as a result of stab wounds.

Second, that the defendant had one of these three states of mind: Either he intended to kill, or he intended to do great bodily harm to Samantha Woll, or he knowingly created a very high risk of death or great bodily harm knowing that such harm would be the likely result of his actions.

Third, that when he did the act that caused the death of Samantha Heather Woll, the defendant was committing or attempting to commit the crime of Larceny and/or Home Invasion - First Degree.

For the crime of Larceny, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant took someone else's property.

Second, that the property was taken without consent.

Third, that there was some movement of the property. It does not matter whether the defendant actually kept the property, or whether the property was taken off the premises.

Fourth, that at the time the property was taken, the defendant intended to permanently deprive the owner of the property.

For the crime of Home Invasion - First Degree, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant entered a dwelling without permission. It does not matter whether the defendant got his entire body inside. If the defendant put any part of his body into the dwelling without permission, that is enough to count as an entry.

Second, that when the defendant entered, was present in, or was leaving the dwelling, he committed *the offense of Assault and Battery*.

To prove the charge of Assault and Battery, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant committed a Battery on Samantha Heather Woll.

A Battery is a forceful, violent, or offensive touching of the person, or something closely connected with the person of another.

The touching must have been intended by the defendant, that is, not accidental, and it must have been against Samantha Heather Woll's will. It does not matter whether the touching caused an injury.

And second, that the defendant intended either to commit a Battery upon Samantha Heather Woll or to make her reasonably fear an immediate Battery.

Third, that when the defendant entered, was present in, or was leaving the dwelling, either of the following circumstances existed: Either (a) he was armed with a dangerous weapon, and/or (b) another person was lawfully present in the dwelling.

Attempting to commit a crime requires the prosecutor to prove the following elements beyond a reasonable doubt:

First, that the defendant intended to commit the crime of Larceny or Home Invasion - First Degree, which are defined above.

Second, that the defendant took some actions toward committing the alleged crime, but failed to complete the crime.

It is not enough to prove that the defendant made preparations for committing the crime. Things like planning the crime or arranging how it will be committed are just preparations. They do not qualify as an attempt.

In order to qualify as an attempt, the action must go beyond mere preparation to the point where the crime would have been completed if it had not been interrupted by outside circumstances.

> To qualify as an attempt, an act must clearly and directly be related to the crime that the defendant is charged with attempting and not some other objective.
>
> * * *
>
> In Count 3, the defendant is charged with the crime of Home Invasion in the First Degree.[]
>
> I already read the elements of that crime during the Felony Murder elements, so I'm not going to re-read those again, but you can refer to this page if you want to go over those when you're discussing that charge. [Emphasis added.]

Admittedly, there are multiple ways in which the crime of first-degree home invasion may potentially be committed. Our Supreme Court has explained:

> The alternative elements of first-degree home invasion can be broken down as follows:
>
> Element One: The defendant *either*:
>
> 1. breaks and enters a dwelling or
>
> 2. enters a dwelling without permission.
>
> Element Two: The defendant *either*:
>
> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or
>
> 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.
>
> Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:
>
> 1. the defendant is armed with a dangerous weapon or
>
> 2. another person is lawfully present in the dwelling. [*People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).]

In recognizing the existence of these various alternatives, our Supreme Court cautioned that appellate courts should focus the appellate inquiry on the elements that were actually "at issue" in the case and not on hypothetical means by which a home invasion *may* be committed. See *id*. at 44 (addressing whether third-degree home invasion was a necessarily included lesser offense of first-degree home invasion).

In this case, it is clear from the charging language in the amended information, as well as the prosecutor's closing argument and the final jury instructions that the jury was presented with

a single theory for how defendant was alleged to have committed this offense, which was that defendant entered the dwelling without permission, committed an assault and battery against the victim that resulted in her death, while either the victim was lawfully present and/or defendant was armed with a dangerous weapon. The first-degree home invasion charge was not predicated on allegations relating to a larceny or any other felony. It is also clear that the stabbing constituted both the assault and the murder. The prosecutor's theory was that defendant stabbed the victim in her home and left, after which, the victim died. The prosecutor's argument did not present the idea of an assault that was separate from the murder. Therefore, on this record, the jury necessarily decided that defendant did not commit the assault or the murder, and the Double Jeopardy Clause thus prohibits the prosecution from retrying defendant on the first-degree home invasion charge because under all of the facts and circumstances, the critical issue before the jury was whether defendant was the person who committed the assault and murder; the jury clearly resolved this issue in defendant's favor. *Yeager*, 557 US at 119-120, 122-123. In light of the prosecution's theory, a rational jury could not have grounded its verdict of acquittal for second-degree murder on a finding other than that defendant did not attack or assault the victim. *Id.* at 120.

We do not foreclose the possibility that defendant *could have been* charged with first-degree home invasion in such a manner that retrial on a hung count would not have been barred under the Double Jeopardy Clause by the jury's acquittal for second-degree murder. However, the prosecution has not provided any citation to the record to support, nor does it appear to seriously argue, that the jury was presented with any theory of first-degree home invasion other than the theory relying on the commission of an assault.[5] Even if the trial evidence could have supported alternate theories, the prosecution does not claim to have actually presented those alternatives to the jury. A jury is bound to follow the law as given to it by the trial court in its instructions. See MCL 768.29 ("The court shall instruct the jury as to the law applicable to the case . . ."). As quoted above, the jury was instructed that an assault was a necessary element of the first-degree home invasion charge. The prosecution has not provided this Court with any legal authority for the proposition that the Double Jeopardy Clause as interpreted in *Yeager* may be circumvented by amending the information or otherwise changing the alleged theory of prosecution for the hung count.

Permitting the prosecution to employ such a tactic would be contrary to the fundamental purpose of the Double Jeopardy Clause, as explained by the United States Supreme Court in *Burks v United States*, 437 US 1, 11; 98 S Ct 2141; 57 L Ed 2d 1, 9-10 (1978):

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from

---

[5] On page 11 of the prosecution's appellate brief, the prosecution concedes that the assault-predicated theory was the sole theory of prosecution for first-degree home invasion actually presented to the jury.

-12-

being subjected to the hazards of trial and possible conviction more than once for an alleged offense." [Citations omitted; ellipsis and alteration in original.]

Accordingly, the prosecution is prohibited by the Double Jeopardy Clause from retrying defendant on the first-degree home invasion charge, and the trial court's ruling thus was not erroneous. *Yeager*, 557 US at 112, 119, 122-123.

## III. DOCKET NO. 372604

## A. SUFFICIENCY OF THE EVIDENCE

In Docket No. 372604, defendant argues that the evidence was insufficient to allow the jury to find him guilty beyond a reasonable doubt of lying to a peace officer, contrary to MCL 750.479c, and that his federal and state constitutional due-process rights were thereby violated. An appellate challenge to the sufficiency of the evidence is reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v Virginia*, 443 US 307, 315; 99 S Ct 2781; 61 L Ed 2d 560 (1979) (quotation marks and citation omitted). Michigan's Constitution provides similar due-process protection. *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024) ("[A] conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand.") (citing US Const, Ams V and XIV; Const 1963, art 1, § 17; *Jackson*, 443 US 307; *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979) (opinion by COLEMAN, C.J.)).

"In reviewing a challenge to the sufficiency of the evidence, this Court analyzes the evidence presented in the light most favorable to the prosecution to determine whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). Circumstantial evidence and reasonable inferences derived from the evidence can provide satisfactory proof of the elements of the crime. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). It is for the jury to weigh the evidence and address the credibility of the witnesses; therefore, any conflicts in the evidence must be resolved in the prosecution's favor. *Id.* at 587-588.

"This standard of review is deferential to the fact-finder that weighed the evidence to determine the criminal defendant was guilty beyond a reasonable doubt," but the "reviewing court only defers to a jury on questions of fact; it does not defer on questions of law." *Prude*, 513 Mich at 385. "Questions of law that are not within the province of the jury include the proper scope of a penal statute . . . ." *Id*.

In this case, the amended information charged defendant in Count 4 with violating MCL 750.479c(2) as follows:

> [Defendant] after being informed by Patrick Lane and/or Steven Ford of the Detroit Police Department that the officer was conducting a criminal investigation,

did knowingly and willfully make a statement or statements to the officer(s) that he knew was false or misleading regarding the following material fact or facts relating to the investigation that he committed larcenies or attempted larcenies from motor vehicles on October 21, 2023, and the officer was conducting a criminal investigation for Larceny from a Motor Vehicle ; contrary to MCL 750.479c(2)(c).

MCL 750.479c provides in relevant part as follows:

(1) Except as provided in this section, a person who is informed by a peace officer that he or she is conducting a criminal investigation shall not do any of the following:

(a) By any trick, scheme, or device, knowingly and willfully conceal from the peace officer any material fact relating to the criminal investigation.

(b) Knowingly and willfully make any statement to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.

(c) Knowingly and willfully issue or otherwise provide any writing or document to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.

(2) A person who violates this section is guilty of a crime as follows:

* * *

(c) If the crime being investigated is a felony punishable by imprisonment for 4 years or more, the person is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $5,000.00, or both.

We have previously explained:

[T]his statute "prohibits knowingly and willfully making a statement regarding a material fact 'that the person knows is false or misleading.' " *People v Williams*, 318 Mich App 232, 239; 899 NW2d 53 (2016). For purposes of this statute, mislead means "1. to lead or guide in the wrong direction. 2. to lead into error of conduct, thought, or judgment; lead astray." *Id*. at 240 (quotation marks and citation omitted). Additionally, false statements are misleading as well because "[a]n affirmatively false statement—a bald-faced lie—may turn an investigator's attention away from the true perpetrator or the source of valuable evidence." *Id*. [*People v Simon*, 339 Mich App 568, 581; 984 NW2d 800 (2021) (second alteration in original).]

"The plain language of the statute conveys the Legislature's intent to hold fully responsible for accuracy and candor those who provide information to peace officers in the course of a criminal investigation." *People v Williams*, 318 Mich App 232, 241; 899 NW2d 53 (2016).

-14-

Here, defendant argues on appeal that his conviction for lying to a police officer must be overturned because "there was no investigation into larcenies from a motor vehicle, nor was Mr. Jackson-Bolanos ever informed of such an investigation." Thus, defendant contends the statute requires a peace officer to indicate the specific crime that is being investigated because only false or misleading statements regarding "that criminal investigation" come within the purview of the statute. Defendant maintains that he was brought in for questioning under the "false" premise that he was being questioned about certain glasses he sold to a pawn shop and was never informed that the police were investigating larcenies from vehicles while the officers *actually* were investigating defendant for murder.

This Court has stated that one of the elements that the statute requires the prosecution to prove is that "the peace officer was conducting a criminal investigation and advised [the defendant] to that effect." *People v Klages*, 339 Mich App 610, 624; 984 NW2d 822 (2021). However, defendant's appellate argument willfully ignores the fact that the interview video shows that Detective Lane expressly informed defendant that he was in custody and was being questioned about a series of vehicle break-ins. We conclude that this was legally sufficient to satisfy the requirements of the statute, and defendant thus has not demonstrated that the evidence was insufficient to justify a rational trier of fact in finding that each element of this offense had been proven beyond a reasonable doubt. *Lundy*, 467 Mich at 257; *Prude*, 513 Mich at 385. We therefore affirm defendant's conviction.

## B. THE PSIR

Defendant also argues that the trial court erred by not removing information related to Woll's death from the Presentence Investigation Report (PSIR) because defendant was acquitted by the jury of premeditated and second-degree murder and facts involving that acquitted conduct were not relevant to the crime of which defendant was actually convicted, which was lying to a police officer regarding a criminal investigation of larcenies from vehicles. Defendant seeks to have his PSIR corrected for accuracy, and he expressly states on appeal that he is not seeking resentencing.

A trial court's response to a defendant's challenge to the accuracy of a PSIR is reviewed for an abuse of discretion. *People v Maben*, 313 Mich App 545, 552; 884 NW2d 314 (2015). "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted).

A court, when sentencing the defendant who has been convicted of some offenses and acquitted of others, may not rely on acquitted conduct to impose sentence because to do so violates the defendant's right to due process. *People v Beck*, 504 Mich 605, 609, 613-615, 629; 939 NW2d 213 (2019). However, this Court explained in *People v Stokes*, 333 Mich App 304, 311-312; 963 NW2d 643 (2020), that a trial court may review a PSIR that contains information regarding acquitted conduct without violating *Beck*, so long as the court does not rely on the acquitted conduct when sentencing the defendant.

Nonetheless, this Court recently recognized that information regarding acquitted conduct that is contained in the PSIR still may have serious effects for a defendant throughout a term of imprisonment, including effects on matters such as security classification and parole. *People v*

*Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 9. Thus, although this Court in *Knepper* concluded that information about crimes of which the defendant was acquitted did not necessarily need to be redacted from the PSIR so long as the trial court did not rely on that challenged information at sentencing, we nevertheless held that the defendant was entitled to have the PSIR modified to clarify the nature of the jury's acquittals. *Id*. at ___; slip op at 8-9. We explained:

> This Court has ruled that when a trial court "fail[s] to adequately resolve [a defendant]'s challenges" to a PSIR, remand is appropriate "for proper consideration of his challenges." *Maben*, 313 Mich App at 555. During defendant's sentencing hearing, defense counsel objected to the facts set forth in the "Agent Description of the Offense" that were derived entirely from the police report because many of those facts were inconsistent with the jury's verdict of acquittal on three counts. Counsel proposed adding the following language to the agent's description: "Defendant denies physically assaulting the victim and specifically denies strangling or sexually assaulting the victim, and the jury verdict supports the Defendant's position." The trial court agreed to include the reference to defendant's denials, but it declined to include a reference to the acquittals. Although we agree with the trial court that defense counsel's proposed language may have overstated what the jury determined, we conclude that the jury's verdict of acquittal on three of the four counts, including the charge of strangulation, must be stated in the agent's description. We reach this conclusion because, absent recognition that defendant was acquitted of crimes based on conduct recited in the PSIR, the agent's description would constitute inaccurate information. Therefore, we remand the case for the limited purpose of modifying the PSIR to ensure that the agent's description clearly reflects defendant's acquittal on three of the four charges that flowed from the police report. [*Id*. at ___; slip op at 9 (alterations in original).]

Here, after reviewing the PSIR, it is not clear to us that defendant's lying to a police officer conviction was premised on his false statements about breaking into cars, as we have described earlier in this opinion. The description of the offense seems to suggest that he was convicted for lying about the murder of which he was acquitted. Pursuant to *Knepper*, we remand this matter for the limited purpose of allowing the trial court to address defendant's concerns about the accuracy of his PSIR under the proper framework as set forth in our opinion in *Knepper*.

In Docket No. 372263, we affirm the trial court's dismissal with prejudice of the charges of felony murder and first-degree home invasion. In Docket No. 372604, we affirm defendant's conviction, but we remand for the limited purpose of amending the PSIR consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi